IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

VIAHART LLC.,

    Plaintiff,

v.                                               Case No.: 1:19-cv-08181

THE PARTNERSHIPS AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",

    Defendants.

## COMPLAINT

Plaintiff, VIAHART, LLC ("VIAHART" or "Plaintiff"), by its undersigned counsel, hereby complains of the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants"), and for its Complaint hereby alleges as follows:

## JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., the Federal Copyright Act, 17 U.S.C. § 101, et seq., 28 U.S.C. § 1338(a)–(b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly

targets consumers in the United States, including Illinois, through at least the fully interactive commercial Internet stores operating under the Defendant Domain Names and/or the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can purchase products bearing infringing and/or counterfeit versions of Plaintiff's trademark. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products that infringe Plaintiff's trademark and/or copyright to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## INTRODUCTION

3.    This action has been filed by Plaintiff to combat online trademark and copyright infringers who trade upon Plaintiff's reputation and goodwill and valuable trademark and copyrights by selling and/or offering for sale products hereinafter referred to as the "BRAIN FLAKES Products" in connection with Plaintiff's federally registered BRAIN FLAKES trademark. In addition, the defendants are selling unauthorized products that are based on and derived from the copyrighted subject matter created by VIAHART, hereinafter referred to as the "BRAIN FLAKES Works."

4.    Plaintiff is the owner of the BRAIN FLAKES trademark, which is covered by U.S. Trademark Registration No. 5,049,910 ("BRAIN FLAKES Trademark"). A true and correct copy of the federal trademark registration certificate for the mark is attached hereto as Exhibit 1. Plaintiff is the owner of Copyright Registration Nos. TX 8-704-345; TX8-735-133; VA 2-139-329; VA 2-142-718; VA 2-179-710; VA 2-179-712; and VA 2-176-658 are attached hereto as Exhibit 2. All

of the copyrights have an effective date that predates defendants acts of copyright infringement.

5. Below is VIAHART's official website for BRAIN FLAKES which is used in connection with interlocking plastic discs often sold in sets of 500 pieces:



6. The Defendants operate as a ring of counterfeiters operating on e-commerce sites such as Amazon, eBay and, Alibaba. E-commerce giant Alibaba has even formed a special task force to root out illegal counterfeiting rings. According to Alibaba, telltale indications of a counterfeiting ring and its affiliated manufacturing source in action are the use of fictitious identities that are adopted to provide the counterfeiting ring with the ability to play whack-a-mole with authorities

# Fighting China's counterfeits in the online era

Xinhua | Updated: 2017-09-19 14:20 

BEIJING - A secret team in Chinese e-commerce giant Alibaba has the task of pretending to be online consumers who test-buy purchases from the billion-plus products on its platforms.

Alibaba's Anti-Counterfeiting Special Task Force, formed last year, actively works with local law enforcement agencies, said Qin Seng.

"After we clean up online shops selling counterfeits, the counterfeiters usually change their identities and places of dispatch, using more covert means to continue selling online," Qin said.

The team uses big data to identify counterfeits and the vendors, affiliated dealers and factories suspected of producing or selling counterfeit items. They pass evidence to the public security, administration of commerce and industry, quality inspection, food and drug supervision and other law enforcement agencies. At the same time, they investigate the evidence in the field.

The team faces many risks in their offline probes.

"Most counterfeiting dens are hidden and well-organized. For example, we encountered a village producing counterfeits. The villagers installed cameras everywhere and when they saw outsiders entering, they became vigilant and even threatened us," Qin said.

www.chinadaily.com.cn/business/2017-09/19/content_32200290.htm

7. Plaintiff's investigation shows that the telltale signs of an illegal counterfeiting ring are present in the instant action. For example, the online storefront names set forth in Schedule A employ no normal business nomenclature and, instead, have the appearance of being made up. Thus, the Defendant Internet Stores are using fake online storefronts designed to appear to be selling genuine Plaintiff products, while selling inferior imitations of Plaintiff's products. The Defendant Internet Stores also share unique identifiers, such as design elements and similarities of the

counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of Plaintiff's registered trademark, as well as to protect unknowing consumers from purchasing unauthorized BRAIN FLAKES products over the Internet. Lastly, Plaintiff's investigation has discovered that one of the named defendants in the present action is a factory that produces thousands of products a month that appear to be supplied to the rest of the counterfeiting ring which are the exact copies of the BRAIN FLAKES products:



8. This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in Illinois and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Illinois and in this Judicial District. In addition, each defendant has offered to sell and ship infringing products into

this Judicial District.

## THE PLAINTIFF

9. Plaintiff, VIAHART, LLC ("VIAHART") is a Limited Liability Company organized under Texas law. VIAHART maintains its principal place of business at 1321 Upland Dr. #6481 Houston TX 77043.

10. BRAIN FLAKES products are mainly building toys. Since the initial launch of its original BRAIN FLAKES products in 2014, the BRAIN FLAKES trademark has been the subject of substantial and continuous marketing and promotion by Plaintiff. Plaintiff has and continues to widely market and promote its BRAIN FLAKES trademark in the industry and to consumers. Plaintiff has invested over $100,000 in molds, advertising, and safety testing. Plaintiff's promotional efforts include — by way of example but not limitation — substantial print media, the VIAHART retail website https://www.viahart.com/, numerous social media outlets, and sales materials. The BRAIN FLAKES products have been featured in the Wall Street Journal and BRAIN FLAKES is one of the best selling building toy brands in the United States.

11. The Plaintiff maintains strict quality control standards for all products featuring the Plaintiff's mark. Products are regularly inspected and tested for quality of craftsmanship and manufacturing, but also for safety. Plaintiff's products are distributed through retail establishments as well as online at the following addresses: www.viahart.com and https://www.amazon.com/s?marketplaceID=ATVPDKIKX0DER&me=A2F9QUWMX16RV7&merchant=A2F9QUWMX16RV7&redirect=true.

12. The BRAIN FLAKES trademark is distinctive and identifies the source of the merchandise as goods sold by the Plaintiff. The BRAIN FLAKES trademark registration constitutes prima facie evidence of its validity, and of Plaintiff's exclusive right to use the BRAIN FLAKES trademark pursuant to 15 U.S.C. § 1057 (b).

13. The BRAIN FLAKES trademark has been continuously used and never abandoned.

14. Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the BRAIN FLAKES trademark and BRAIN FLAKES Products. As a result, products bearing the BRAIN FLAKES trademark are widely recognized and exclusively associated by consumers, the public, and the trade community as being products sourced from Plaintiff.

## THE DEFENDANTS

15. Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within Illinois and in this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit and infringing BRAIN FLAKES products to consumers within the United States, including Illinois and in this Judicial District.

## THE DEFENDANTS' UNLAWFUL CONDUCT

16. The success of the BRAIN FLAKES brand has resulted in its counterfeiting and infringement. Plaintiff has identified numerous marketplace listings on platforms such as Amazon and AliExpress, including the Defendant Internet Stores, which were offering for sale, selling, and importing counterfeit and infringing BRAIN FLAKES products to consumers in this Judicial District and throughout the United States. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of

goods seized by the U.S. government in fiscal year 2013 was over $1.74 billion, up from $1.26 billion in 2012. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

17. Upon information and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine BRAIN FLAKES products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union and PayPal. Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos. Plaintiff has not licensed or authorized Defendants to use its BRAIN FLAKES trademark, and none of the Defendants are authorized retailers of genuine BRAIN FLAKES products.

18. Upon information and belief, Defendants also deceive unknowing consumers by using the BRAIN FLAKES trademark without authorization within the content, text, and/or meta tags of their websites to attract various search engines crawling the Internet looking for websites relevant to consumer searches for BRAIN FLAKES products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine BRAIN FLAKES products. Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of

search results after others are shut down. As such, Plaintiff also seeks to disable Defendant Domain Names owned by Defendants that are the means by which the Defendants could continue to sell counterfeit and/or infringing BRAIN FLAKES products.

19. Defendants often go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, to avoid detection, Defendants register Defendant Domain Names using names and physical addresses that are incomplete, contain randomly typed letters, or fail to include cities or states. Other Defendant Domain Names often use privacy services that conceal the owners' identity and contact information. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

20. There are also similarities among the Defendant Internet Stores. For example, some of the Defendant websites have virtually identical layouts. In addition, the counterfeit and/or infringing BRAIN FLAKES products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the counterfeit and/or infringing BRAIN FLAKES products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, metadata, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar

name servers, and the use of the same text and images.

21. Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring takedown demands sent by brand owners. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit and infringing goods shipped through the mail and express carriers.

22. Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operating in spite of Plaintiff's enforcement efforts. Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

23. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the BRAIN FLAKES trademark in connection with the advertisement, distribution, offering for sale, and sale of counterfeit BRAIN FLAKES products into the United States and Illinois over the Internet. Each Defendant Internet Store offers

shipping to the United States, including Illinois, and, on information and belief, each Defendant has offered to sell counterfeit and infringing BRAIN FLAKES products into the United States, including Illinois.

24. Defendants' use of the BRAIN FLAKES trademark in connection with the advertising, distribution, offering for sale, and sale of counterfeit BRAIN FLAKES products, including the sale of counterfeit and infringing BRAIN FLAKES products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers, and is irreparably harming Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

25. Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

26. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered BRAIN FLAKES trademark in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The BRAIN FLAKES trademark is highly distinctive marks. Consumers have come to expect the highest quality from Plaintiff's products provided under the BRAIN FLAKES trademark.

27. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the BRAIN FLAKES trademark without Plaintiff's permission.

28. Plaintiff is the exclusive owner of the BRAIN FLAKES trademark. Plaintiff's United States Registration for the BRAIN FLAKES trademark (Exhibit 1) is in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiff's rights in the BRAIN

FLAKES trademark and are willfully infringing and intentionally using counterfeits of the BRAIN FLAKES trademark. Defendants' willful, intentional and unauthorized use of the BRAIN FLAKES trademark is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general consuming public.

29. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

30. Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known BRAIN FLAKES trademark.

31. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of counterfeit BRAIN FLAKES products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

32. Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

33. Defendants' promotion, marketing, offering for sale, and sale of counterfeit BRAIN FLAKES products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' counterfeit BRAIN FLAKES products by Plaintiff.

34. By using the BRAIN FLAKES trademark in connection with the sale of counterfeit BRAIN FLAKES products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the counterfeit BRAIN FLAKES products.

35. Defendants' false designation of origin and misrepresentation of fact as to the origin

and/or sponsorship of the counterfeit BRAIN FLAKES products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

36. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## COUNT III
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
## (815 ILCS § 510, *et seq.*)

37. Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

38. Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their counterfeit BRAIN FLAKES products as those of Plaintiff, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine BRAIN FLAKES products, representing that their products have Plaintiff's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

39. The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, et seq.

40. Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## COUNT IV
## COPYRIGHT INFRINGEMENT 17 U.S.C. § 501(a)

41. Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

42. The BRAIN FLAKES Works have significant value and have been produced and created at considerable expense. Plaintiff is the owner of each original works covered by Copyright Registrations. (Exhibit 2). Each of the works covered by Copyright Registrations (Exhibit 2) is copyrightable subject matter under the laws of the United States.

43. Plaintiff, at all relevant times, has been the holder of the pertinent exclusive rights infringed by Defendants, as alleged hereunder, including but not limited to the copyrighted BRAIN FLAKES Works, including derivative works. The BRAIN FLAKES Works are the subject of valid Copyright Registrations. (Exhibit 2).

44. Upon information and belief, Defendants had access to the works through Plaintiff's normal business activities. After accessing Plaintiff's work, Defendants wrongfully created copies of the copyrighted The BRAIN FLAKES without Plaintiff's consent and engaged in acts of widespread infringement through posting the works via online websites and digital markets, and the creation and sale of prints.

45. VIAHART is informed and believes and thereon alleges that Defendants further infringed VIAHART's copyright by making or causing to be made derivative works from the BRAIN FLAKES Works by producing and distributing reproductions without VIAHART's permission.

46. VIAHART's products include a copyright notice advising the general public that the BRAIN FLAKES Products are protected by the Copyright Laws.

47. Defendants, without the permission or consent of the Plaintiff, have, and continue to sell online infringing derivative works of the copyrighted BRAIN FLAKES Products. Defendants have violated Plaintiff's exclusive rights of reproduction and distribution. Defendants actions constitute an infringement of Plaintiff's exclusive rights protected under the Copyright Act (17 U.S.C. §101 et seq.).

48. Further, as a direct result of the acts of copyright infringement, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the copyrighted BRAIN FLAKES Works. VIAHART is entitled to disgorgement of Defendants' profits directly and indirectly attributable to their infringement of the BRAIN FLAKES Works.

49. The foregoing acts of infringement constitute a collective enterprise of shared, overlapping facts and have been willful, intentional, and in disregard of and with indifference to the rights of the Plaintiff.

50. As a result of Defendants' infringement of Plaintiff's exclusive rights under copyrights, Plaintiff is entitled to relief pursuant to 17 U.S.C. §504.

51. The conduct of Defendants is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. §§502 and 503, Plaintiff is entitled to injunctive relief prohibiting Defendants from further infringing Plaintiff's copyright and ordering that Defendants destroy all unauthorized copies. Defendants' copies, plates, and other embodiment of BRAIN FLAKES Works from which copies can be reproduced should be impounded and forfeited to VIAHART as instruments of infringement, and all infringing copies created by Defendants should be impounded and forfeited to VIAHART, under 17 U.S.C §503.

## COUNT V
## CIVIL CONSPIRACY

52. Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

53. Plaintiff is informed and believe and thereon allege that Defendants knowingly and voluntarily entered into a scheme and agreement to engage in a combination of unlawful acts and

misconduct including, without limitation, (1) the Defendants obtained Plaintiff's business information regarding Plaintiff's BRAIN FLAKES Trademark, promotional material, and sales information, etc.; (2) Defendants produced counterfeiting products based on the business information obtained from Plaintiff, and supplied these products to other Defendants in this case; and (3) Defendants collaborated efforts to the distribution, marketing, advertising, shipping, offering for sale, or sale of fake BRAIN FLAKES Products are a violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, et seq.

54. The intent, purpose and objective of the conspiracy and the underlying combination of unlawful acts and misconduct committed by the Defendants was to undermine VIAHART and its business by unfairly competing against it as described above.

55. The Defendants each understood and accepted the foregoing scheme and agreed to do their respective part, to further accomplish the foregoing intent, purpose and objective. Thus, by entering into the conspiracy, each Defendant has deliberately, willfully and maliciously permitted, encouraged, and/or induced all of the foregoing unlawful acts and misconduct.

56. As a direct and proximate cause of the unlawful acts and misconduct undertaken by each Defendant in furtherance of the conspiracy, VIAHART has sustained, and unless each Defendant is restrained and enjoined, will continue to sustain severe, immediate and irreparable harm, damage and injury for which VIAHART has no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily preliminarily, and permanently enjoined and restrained from:

    a. using the BRAIN FLAKES trademark in any manner in connection with the

      distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine BRAIN FLAKES product, or is not authorized by Plaintiff to be sold in connection with the BRAIN FLAKES trademark;

b. passing off, inducing, or enabling others to sell or pass off any product as a genuine BRAIN FLAKES product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the BRAIN FLAKES trademark;

c. committing any acts calculated to cause consumers to believe that Defendants' counterfeit BRAIN FLAKES products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d. further infringing the BRAIN FLAKES trademark and damaging Plaintiff's goodwill;

e. otherwise competing unfairly with Plaintiff in any manner;

f. shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any BRAIN FLAKES trademark, or any reproductions, counterfeit copies, or colorable imitations thereof;

g. using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Accounts, the Defendant Domain Names, or any other domain name or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell counterfeit BRAIN FLAKES products; and

h. operating and/or hosting websites at the Defendant Domain Names and any other domain names registered or operated by Defendants that are involved with the distribution,

marketing, advertising, offering for sale, or sale of any product bearing the BRAIN FLAKES trademark, or any reproduction, counterfeit copy or colorable imitation thereof that is not a genuine BRAIN FLAKES product or not authorized by Plaintiff to be sold in connection with the BRAIN FLAKES trademark; and

2) That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendants have complied with paragraph 1, a through h, above;

3) Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as Amazon and Alibaba Group Holding Ltd., Alipay.com Co., Ltd. and any related Alibaba entities (collectively, "Alibaba"), social media platforms, Facebook, YouTube, LinkedIn, Twitter, Internet search engines such as Google, Bing and Yahoo, web hosts for the Defendant Domain Names, and domain name registrars, shall:

    a. disable and cease providing services for any accounts through which Defendants engage in the sale of counterfeit BRAIN FLAKES products using the BRAIN FLAKES trademark, including any accounts associated with the Defendants listed on Schedule A;

    b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing BRAIN FLAKES products using the BRAIN FLAKES trademark; and

    c. take all steps necessary to prevent links to the Defendant Domain Names identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Domain Names from any search index; and

4) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the BRAIN FLAKES trademark be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

5) In the alternative, that Plaintiff be awarded statutory damages pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the BRAIN FLAKES trademark;

6) That Plaintiff be awarded its reasonable attorneys' fees and costs; and

7) Award any and all other relief that this Court deems just and proper.

DATED: December 13, 2019

Respectfully submitted,

*/s/ Keith A. Vogt*
Keith A. Vogt (Bar No. 6207971)
Keith Vogt, Ltd.
111 W Jackson BLVD, Suite 1700
Chicago, Illinois 60604
Telephone: 312-675-6079
E-mail: keith@vogtip.com

**ATTORNEY FOR PLAINTIFF**